**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ANTONIO T. BALLARD,

                Plaintiff,

     v.                                           9:21-CV-1248
                                                        (LEK/CFH)

L. DUTTON,

                Defendant.

---

**APPEARANCES**:                                 **OF COUNSEL**:

ANTONIO T. BALLARD
21893-052
BUTNER MEDIUM II
Federal Correctional Institution
P.O. Box 1500
Butner, North Carolina 27509

Attorney for the                            C. HARRIS DAGUE, ESQ.
United States of America                Assistant United States Attorney
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207-2924
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION AND ORDER**

**I.    INTRODUCTION**

      Plaintiff Antonio T. Ballard commenced this action by filing a pro se civil rights complaint, together with an application to proceed in forma pauperis. *See* Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"). By Decision and Order entered on December 16, 2021, this Court granted the IFP Application and found, after reviewing the complaint

pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), that a response from defendant Dutton was warranted with respect to plaintiff's Eighth Amendment failure-to-protect claim, made pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*").  Dkt. No. 8 ("December 2021 Order").

Presently before the Court is defendant Dutton's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and on the basis of qualified immunity, and plaintiff's amended complaint, which he submitted in addition to opposing the motion to dismiss.  *See* Dkt. No. 30 ("Motion to Dismiss"); Dkt. No. 36 ("Am. Compl."); Dkt. No. 38 ("Opposition to the Motion to Dismiss").

## II.   PROCEDURAL HISTORY

Following the December 2021 Order, defendant Dutton was served, and counsel filed the Motion to Dismiss on his behalf.  Thereafter, plaintiff sought and was granted an extension of time to respond to the Motion to Dismiss.  Dkt. No. 33.

On August 19, 2022, plaintiff requested a second extension of thirty days to submit "his objection" to the Motion to Dismiss and amend his complaint to include documents to support the denial of the motion.  Dkt. No. 34.  On August 22, 2022, this Court granted plaintiff's request for an extension of time to file a response to the Motion to Dismiss, and required that response be filed by September 19, 2022.  Dkt. No. 35.

On August 29, 2022, plaintiff's amended complaint was received for filing.  *See* Am. Compl.  On September 12, 2022, counsel for defendant Dutton filed a letter arguing that the amended complaint was improperly filed without leave of the Court, and asking that the Court consider the pending Motion to Dismiss even if the pleading is deemed to be one filed as of right.  Dkt. No. 37.  On September 19, 2022, the Opposition to the Motion to Dismiss was

received for filing. One week later, counsel for defendant Dutton filed a reply to plaintiff's opposition. Dkt. No. 39.

## III. DISCUSSION

### A. Relevant Legal Standard

When considering a motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." *Selevan v. New York Thruway Auth*., 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]")); *see also Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible. . . .") (internal quotation marks and citation omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

"A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)). Indeed, "[t]he mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the [p]laintiff's complaint." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 and n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases)[1]; *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a pro se plaintiff is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint"), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gil*, 824 F.2d at 195 (in reviewing district court's dismissal of pro se plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss); *see also Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020) ("hold[ing] that when a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint").

### B.     Filing of the Amended Complaint

As an initial matter, when the Court granted plaintiff a second extension of time to submit "his objection" to the Motion to Dismiss and amend his complaint to include

---

[1] Copies of unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

documents to support the denial of the motion, it was not the Court's understanding that plaintiff intended to submit an entirely new pleading and a separate opposition to the Motion to Dismiss. Rather, it was the Court's understanding that plaintiff intended to oppose the Motion to Dismiss, including with documentary evidence referenced in the original complaint.

In any event, in light of plaintiff's pro se status, and because the amended complaint does not contain any allegations that are inconsistent with the allegations in the original complaint, the Court believes it is appropriate to consider plaintiff's amended complaint as having been filed as of right, and consider the Motion to Dismiss in light of the allegations set forth therein. *See Pettaway*, 955 F.3d at 303-04.

### C. Overview of the Amended Complaint

The amended complaint, like the original complaint, asserts claims arising during plaintiff's confinement at Ray Brook Federal Correctional Institute ("FCI Ray Brook"), while he was an inmate in the custody of the Federal Bureau of Prisons. *See generally* Am. Compl. The following facts are set forth as alleged in the amended complaint.

Following plaintiff's arrival at FCI Ray Brook, he informed an unknown corrections official (not a party) that he "did not feel safe walking the . . . compound" because of his "sex offender status" and history of prior altercations with other inmates. Am. Compl. at 2. Plaintiff requested protective custody status, and was "instructed to talk to SIS about his concerns[.]" *Id.*

Thereafter, plaintiff "met with S.I.S. and discussed his safety concerns." Am. Compl. at 2. The two "S.I.S." officials "informed plaintiff that he could not just request protective custody[,]" and outlined the process for him to do so, which included quarantining for two weeks and then "refus[ing] the compound" to receive a disciplinary ticket and secure

placement in the special housing unit.  *Id.* at 3.

Because plaintiff did not wish to receive a "disciplinary report, which would result in his phone and commisary [sic] privilages [sic] suspended for . . . 3-6 months," he "decided his best option was to risk his safety and walk the Ray Brook compound[.]"  Am. Compl. at 3.  As a result, after quarantining for two weeks, plaintiff "decided to associate himself with inmates associated with the South Car."  *Id.*  One of those inmates, known as "Chew", sought information from plaintiff regarding the nature of his conviction.  *Id.*  After plaintiff provided Chew with certain information related to his conviction, Chew asked plaintiff for additional documentation proving that he did not knowingly commit a sexual offense against minors.  *Id*. at 3-4.  Chew advised plaintiff that he could not safely walk the compound until such information was produced.  *Id.*

On August 13, 2021, plaintiff "sent an electronic cop out to the Warden expressing a threat to his safety."  Am. Compl. at 4.  Plaintiff also informed the Warden about his prior attempt to be placed in protective custody.  *Id.*

Days later, plaintiff was "called down to the lieutenant [sic] office[,]" where Corrections Lieutenant John Doe (not a party) accused him of lying about the allegations made in his electronic cop-out and asked for the names of the inmates "threatening his life."  Am. Compl. at 4-5.  Because plaintiff did not wish to be labeled a "rat" and face future repercussions, he "assured" the official that he was "safe for now" and returned back to general population.  *Id.* at 5.  Thereafter, plaintiff "receiv[ed] his property from R&D" and "immediately" showed it to Chew and another inmate in the same gang.  *Id.*

Upon reviewing the documents provided by plaintiff, Chew and the other gang member asked for additional material that was not in plaintiff's possession.  Am. Compl. at 5.

6

Plaintiff informed these inmates that he would search for the material the next day.  *Id.*

After "thoroughly searching through his property" on August 26, 2021, plaintiff "came to the conclusion that approx[imately] five pages of [a trial transcript] were missing[.]"  *Id.*  Plaintiff spoke to the two inmates in the South Car gang about the missing material, and was advised that he needed to find a new cell "by Monday" to avoid problems.  *Id.* at 5-6.

On Sunday, August 28, 2021, plaintiff spoke with the housing officer (not a party) and requested protective custody.  Am. Compl. at 6.  Corrections Lieutenant Rivers (not a party) denied plaintiff's request.  *Id.*  Thereafter, plaintiff spoke with a different corrections lieutenant and "informed" this official that he was "feeling suicidal[.]"  *Id.*  Plaintiff was then placed on suicide watch.  *Id.*

On or about August 29, 2021, plaintiff was discharged from "suicide watch."  Am. Compl. at 6-7.  Following his discharge, plaintiff met with defendant Corrections Lieutenant L. Dutton.  *Id.* at 7.  Defendant Dutton told plaintiff that he must disclose the names of the prisoners threatening him if he wanted to be placed in protective custody.  *Id.*  Plaintiff refused out of fear of reprisal by other inmates.  *Id.*  Although defendant Dutton was aware of plaintiff's history of being attacked by other inmates because of his sex-offender status, he declined plaintiff's request for protective custody.  *Id.*

When plaintiff arrived back in general population on the same date, Chew approached plaintiff and told him that he "could not remain on the compound and needed to leave immeadiatly [sic]."  Am. Compl. at 7.  Plaintiff feared for his safety and pleaded with Chew to leave him alone.  *Id.*  Plaintiff also informed Chew that he refused to give defendant Dutton any names of inmates who were threatening him.  *Id.*  Chew and plaintiff then approached

Corrections Officer John Doe (not a party), and Chew informed this official that plaintiff "could not remain on the compound and would be subjected to physical harm if he did."  *Id.*  John Doe then called defendant Dutton to renew plaintiff's request for protective custody, which he denied.  *Id.* at 7-8.

Shortly after returning to his cell in general population, plaintiff was assaulted by Chew.  Am. Compl. at 8.  Plaintiff "immeadiately [sic]" approached John Doe and renewed his request for protective custody.  *Id.*  In response, John Doe ordered "the unit . . . to lock down," and plaintiff was taken to the medical unit, where he was treated for his injuries.  *Id.*

Liberally construed, the amended complaint, like the original complaint, asserts an Eighth Amendment failure-to-protect claim against defendant Dutton pursuant to *Bivens*, along with a claim for negligent infliction of emotional distress.  Am. Compl. at 9-10.  As relief, plaintiff seeks monetary damages.  *Id.* at 11.

### D.     Overview of the Motion to Dismiss and Opposition

Counsel for defendant Dutton argues that plaintiff's Eighth Amendment claim should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) because a *Bivens* remedy is unavailable for plaintiff's novel claims.  *See* Dkt. No. 30-1 at 11-21.  Counsel further argues that defendant Dutton is entitled to qualified immunity with respect to the Eighth Amendment claim asserted against him.  *Id*. at 21-30.

In plaintiff's Opposition to the Motion to Dismiss, he argues that the motion should be denied because (1) "*Bivens* is a factual counterpart of 42 U.S.C. § 1983" and Eighth Amendment claims have previously been allowed under *Bivens*, (2) plaintiff's Eighth Amendment claim is adequately pled, and (3) defendant Dutton is not entitled to qualified

8

immunity. *See id.* at 7-16.

### E. Analysis

#### 1. Negligent Infliction of Emotional Distress Claim

Under the Federal Tort Claims Act ("FTCA"), the United States government waives sovereign immunity for torts committed by its employees "under circumstances where the United States, if a private person, would be liable to the [plaintiff] in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Courts have recognized that negligent infliction of emotional distress claims may be brought under the FTCA. *See, e.g., Tigano v. United States*, 527 F. Supp. 3d 232, 248 (E.D.N.Y. 2021). That said, the law is well-settled that "FTCA claims cannot be asserted against government employees concerning conduct within the scope of their employment." *Levinson v. United States Fed. Bureau of Prisons, Metro. Corr. Ctr.*, No. 20-CV-7375, 2022 WL 909795, at *6 (S.D.N.Y. Mar. 28, 2022) (citing 28 U.S.C. § 2679(a), (d), *Rivera v. United States*, 928 F.2d 592, 608-09 (2d Cir. 1991)). This is because the United States of America is the "only proper federal defendant in an FTCA suit." *Charles v. Potter*, No. 07-CV-10572, 2008 WL 4499130, at *2 (S.D.N.Y. Oct. 7, 2008).

Here, plaintiff does not allege that defendant Dutton was acting outside of the scope of his employment when he denied plaintiff's request for protective custody. Thus, defendant Dutton is not subject to suit under the FTCA. Accordingly, the undersigned recommends that plaintiff's negligence-based claim against defendant Dutton be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief

may be granted.

### 2. Eighth Amendment Failure-to-Protect Claim

42 U.S.C. § 1983 creates a specific damages remedy for plaintiffs whose constitutional rights are violated by state officials. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Congress has not created a similar statutory remedy for such claims against federal officials acting under the color of federal law. *See id.*

In *Bivens*, the Supreme Court of the United States decided that "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar*, 137 S. Ct. at 1854 (citing *Bivens*, 403 U.S. at 397). The Court decided that because "Congress had not foreclosed a damages remedy in 'explicit' terms and that no 'special factors' suggested that the Judiciary should 'hesitat[e]' in the face of congressional silence. . . . it could authorize a remedy under general principles of federal jurisdiction." *Id*. (quoting *Bivens*, 403 U.S. at 396-97).

Since then, the Supreme Court has extended *Bivens* in two cases involving constitutional violations: (1) *Davis v. Passman*, 442 U.S. 228 (1979) (extending *Bivens* under the Fifth Amendment's Due Process Clause); and (2) *Carlson v. Green*, 446 U.S. 14 (1980) (extending *Bivens* to the Eighth Amendment's Cruel and Unusual Punishments Clause for a prison's failure to provide adequate medical treatment). *See Ziglar*, 137 S. Ct. at 1854-55.

Assessing whether to extend *Bivens* requires a two-step inquiry where the district court must determine (1) whether the case presents a "new context", and (2) if so, whether

there are "special factors counselling hesitation." *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18) (internal quotation marks omitted).

With regard to the first step, courts must look to whether "the case is different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 137 S. Ct. at 1859. The Supreme Court provided the following non-exhaustive list of ways in which a case could "differ in a meaningfully way":

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

*Id*. at 1860.

If a claim arises in a new *Bivens* context, the court must ask "whether there are any special factors that counsel hesitation" with extending *Bivens* to the new claim. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (internal quotation marks and brackets omitted). "[S]eparation-of-powers principles" are "central" to that inquiry. *Id*. (quoting *Ziglar*, 137 S. Ct. at 1857). A court must ask "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1857-58. If any factor gives "reason to pause," *Bivens* should not be extended. *Hernandez*, 140 S. Ct. at 743.

Turning to plaintiff's failure-to-protect claim, as noted, the Supreme Court has only recognized an Eighth Amendment claim under *Bivens* relating to "failure to provide adequate medical treatment." *Ziglar*, 137 S. Ct. at 1855 ("These three cases – *Bivens*, *Davis*, and

11

*Carlson* – represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Hernandez*, 140 S. Ct. at 741 ("The Court subsequently extended *Bivens* to cover two additional constitutional claims [in *Davis* and *Carlson*] . . . ."); *see also Doe v. Hagenbeck*, 870 F.3d 36, 43 & n.4 (2d Cir. 2017) ("[T]he Supreme Court has extended [*Bivens*'s] reach only twice," in *Davis* and *Carlson*). "Non-medical" *Bivens* claims under the Eighth Amendment, like the failure-to-protect claim asserted by plaintiff, "implicate[ ] . . . not the duty to provide 'adequate . . . medical care,' but the duty to 'take reasonable measures to guaranty the safety of . . . inmates.'" *Calix v. Pope*, No. 18-CV-3980, 2022 WL 4539511, at *4 (E.D.N.Y. Sept. 28, 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). In other words, there are meaningful differences between medical indifference claims and plaintiff's failure-to-protect claim. Thus, plaintiff's claim arises in a new *Bivens* context. *See Calix*, 2022 WL 4539511, at *4 (citing *Hernandez*, 140 S. Ct. at 743); *see also Herrera v. United States*, No. 20-CV-10206, 2022 WL 902090, at *8 (S.D.N.Y. Mar. 27, 2022) ("While each is equally unacceptable in a civilized society, failure to provide adequate medical care to inmates is a substantively different context from BOP employees' failure to protect inmates . . . ."); *Johnson v. Santiago*, No. 20-CV-6345, 2022 WL 3643591, at *5 (E.D.N.Y. Aug. 24, 2022) (concluding that the plaintiff's failure-to-protect claim "presents a new *Bivens* context because it is meaningfully different than the claim at issue in *Carlson*").

Moreover, at least three special factors counsel hesitation with extending *Bivens* to this new claim. "First, prison housing placements and inmate separations involve complicated, policy-laden tradeoffs about housing resources, as well as difficult predictions of future risk[,]" and "a court is ill-placed to 'predict the systemwide consequences of

recognizing a cause of action under *Bivens'* against the officials who make these decisions." *Calix*, 2022 WL 4539511, at *5 (quoting *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022)); *Johnson*, 2022 WL 3643591, at *5 ("[C]ourts in this circuit have recognized that special factors counsel against recognizing a *Bivens* remedy 'in cases involving prison administration.'" (citation omitted)).

Second, Congress created an "alternative remedial structure" for federal prisoners' claims in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, which omits "a standalone damages remedy against federal jailers." *Ziglar*, 137 S. Ct. at 1865. Although the Supreme Court has yet to decide whether the PLRA forecloses all prisoner *Bivens* suits, it has stated that "[i]t could be argued" that the enactment of the PLRA suggests that "Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id*. In other words, the passage of the PLRA—with its limited remedies—"is enough to counsel hesitation" about the extension of *Bivens* to plaintiff's failure-to-protect claim. *Calix*, 2022 WL 4539511, at *5 (citation omitted); *Johnson*, 2022 WL 3643591, at *5 (same).

Third, because the bar for what "counsels hesitation" is "remarkably low," *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009), and the Supreme Court held in *Ziglar* that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action[,]" 137 S. Ct. at 1865, the unsettled nature of whether or not the FTCA offers plaintiff a potential remedy counsels hesitation in extending a *Bivens* remedy. *See Scott v. Quay*, No. 19-CV-1075, 2020 WL 8611292, at *8 (E.D.N.Y. Nov. 16, 2020) ("The Second Circuit has not yet decided whether, in the wake of [*Ziglar*], the availability of an FTCA action precludes a *Bivens* remedy."); *see also Abdoulaye v. Cimaglia*, No. 15-CV-4921, 2018 WL 1890488, at

13

\*7 (S.D.N.Y. Mar. 30, 2018) (concluding that "the existence of the FTCA as a potential remedy counsels hesitation" in light of *Ziglar*); *Johnson*, 2022 WL 3643591, at \*5 (same); *see also Hernandez*, 140 S. Ct. at 748 & n.9 (explaining that the FTCA is "the exclusive remedy for most claims against Government employees arising out of their official conduct," and that the passage of the FTCA "simply left *Bivens* where it found it" (citation omitted)).

Accordingly, the undersigned recommends granting defendant Dutton's Motion to Dismiss plaintiff's Eighth Amendment failure-to-protect claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the amended complaint be accepted for filing and considered the operated pleading in this case; and it is further

**RECOMMENDED**, that plaintiff's negligent infliction of emotional distress claim asserted against defendant Dutton be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED**, that defendant Dutton's Motion to Dismiss (Dkt. No. 30) be **GRANTED** with respect to plaintiff's Eighth Amendment claim pursuant to Fed. R. Civ. P. 12(b)(6); and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on the parties.

---

[2] In light of this recommendation, the Court declines to address defendant Dutton's argument regarding qualified immunity.

14

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: November 8, 2022
        Albany, New York

*[signature: Christian F. Hummel]*
Christian F. Hummel
U.S. Magistrate Judge

---

[3]  If you are proceeding pro se and you are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. 6(a)(1)(c).