UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANTONIO T. BALLARD

                      Plaintiff,

       -against-                          9:21-CV-1248 (LEK/CFH)

L DUTTON,

                      Defendant.

---

**MEMORANDUM-DECISION AND ORDER**

## I.   INTRODUCTION

Pro se Plaintiff Antonio T. Ballard commenced this civil rights action against Defendant Lucas Dutton by filing a complaint and an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Complaint"); Dkt. No. 2 ("IFP Application"). The Honorable Christian F. Hummel, United States Magistrate Judge, entered a Decision and Order on December 16, 2021, granting Plaintiff's IFP Application and—after conducting 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) review—found that a response from Dutton was warranted as to Plaintiff's Eighth Amendment failure-to-protect claim brought pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Dkt. No. 8 ("Magistrate's December 2021 Order").

Defendant filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state an Eighth Amendment failure-to-protect claim pursuant to Bivens and for dismissal predicated on the defense of qualified immunity. Dkt. No. 30 ("Motion to Dismiss"). Thereafter, Plaintiff filed an Amended Complaint restating his Eighth Amendment failure-to-protect claim pursuant to Bivens and adding a negligent infliction of emotional distress claim pursuant to the Federal Tort Claims Act ("FTCA"). Dkt. No. 36 ("Amended Complaint"). Plaintiff also

separately filed his papers opposing the Motion to Dismiss. Dkt. No. 38 ("Opposition to Motion to Dismiss"). Defendant requested the dismissal of the Amended Complaint, or in the alternative, urged the Magistrate Judge to consider Defendant's pending Motion to Dismiss in the context of the Amended Complaint. Dkt. No. 37 at 1–2; Dkt. No. 39 at 2 n.4 ("Reply"). On November 8, 2022, Judge Hummel issued a Report & Recommendation recommending (1) the acceptance of Plaintiff's Amended Complaint for filing and consideration as the operative pleading; (2) the dismissal without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) of Plaintiff's FTCA negligent infliction of emotional distress claim for failure to state a claim; and (3) the granting of the Motion to Dismiss pursuant to Rule 12(b)(6) with respect to Plaintiff's Eighth Amendment claim. Dkt. No. 40 at 14 ("Report & Recommendation"). No objections to the Report & Recommendation were filed. See generally Docket. For the reasons that follow, the Court adopts in part and rejects in part the Report & Recommendation.

## II.    BACKGROUND

Plaintiff's factual allegations are detailed in the Report & Recommendation, familiarity with which is assumed. R. & R. at 5–8. The procedural history of the filing of the Motion to Dismiss and the Amended Complaint are likewise detailed in the Report & Recommendation, familiarity with which is assumed. Id. at 2–3.

## III.   STANDARD OF REVIEW

"Rule 72 of the Federal Rules of Civil Procedure and Title 28 United States Code Section 636 govern the review of decisions rendered by Magistrate Judges." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 405 (S.D.N.Y. 2002); see also L.R. 72.1. "Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and

recommendations as provided by rules of the court." 28 U.S.C. § 636(b)(1)(C). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. "A judge of the court may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate [judge]." Id. Thus, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." Thomas v. Arn, 474 U.S. 140, 154 (1985). "The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009).

## IV.   DISCUSSION

### A.  Plaintiff's Eighth Amendment Failure-to-Protect Claim Pursuant to Bivens

Courts have conducted de novo review of a Report & Recommendation, even when no objections have been filed, in an abundance of caution. See Parrino v. Sungard Availability Servs., No. 11-CV-3315, 2011 U.S. Dist. LEXIS 154005, at *5 (E.D.N.Y. Mar. 8, 2011) ("Although no objections have been filed and thus *de novo* review is not required, the Court has conducted a *de novo* review of the Report and Recommendation in an abundance of caution . . . ."); O'Neil v. Sporta, No. 16-CV-00579, 2017 U.S. Dist. LEXIS 152169, at *4 (E.D.N.Y. Sept. 19, 2017) ("Although plaintiff has waived any objection to the R&R and thus *de novo* review is not required, the Court has conducted a *de novo* review of the R&R in an abundance of caution."). Here, in light of the complexity of the Bivens jurisprudence, the Court conducts a de novo review of the Report & Recommendation as it relates to Plaintiff's Eighth Amendment failure-to-protect claims pursuant to Bivens.

3

Bivens held that "violation [of the Fourth Amendment] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his constitutional conduct." Bivens, 403 U.S. at 389. The holding in Bivens was subsequently found to apply more broadly beyond the Fourth Amendment context, as the Supreme Court explained: "Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980). The Supreme Court explained that, inter alia, "the Bivens remedy, in addition to compensating victims, serves a deterrent purpose." Id. at 21. "Because the Bivens remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy against the United States[,]" id. (citing Butz v. Economou, 438 U.S. 478, 505 (1978)), and "[i]t is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability[,]" Carlson, 446 U.S. at 21 (footnote omitted) (citation omitted) (citing Imbler v. Pachtman, 424 U.S. 409, 442 (1976) (White, J., concurring in judgment)).

Whether a Bivens claim exists is "'antecedent to the other questions presented.'" Hernandez v. Mesa, 137 S. Ct. 2003, 2006 (2017) (per curiam) (quoting Wood v. Moss, 572 U.S. 744, 757 (2014)). The Magistrate Judge followed the Supreme Court decision in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), and engaged in a two-step inquiry to "determine (1) whether the case presents a 'new context[,'] and (2) if so, whether there are 'special factors counselling hesitation.'" R. & R. at 10–11 (quoting Abbasi, 137 S. Ct. at 1848). The Magistrate Judge found that Plaintiff's Eighth Amendment failure-to-protect claim "arises in a new Bivens context." R. & R. at 12. In arriving at this conclusion, Magistrate Judge argued that "there are meaningful differences between medical indifference claims[,]" id., which are permitted to proceed under

Bivens pursuant to Carlson v. Green, 446 U.S. 14 (1980), "and plaintiff's failure-to-protect claim[,]" R. & R. at 12.

However, in Farmer v. Brennan, the Supreme Court addressed a failure-to-protect claim brought under the Eighth Amendment pursuant to Bivens, which was based on prisoner-on-prisoner violence. See Farmer v. Brennan, 511 U.S. 825, 829–34 (1994). While the Second Circuit has not explicitly addressed whether Bivens applies to Eighth Amendment failure-to-protect claims brought by a federal prisoner pursuant to Farmer, the majority of federal Circuit courts that have addressed this issue have explicitly recognized or have implicitly inferred that Farmer recognized a failure-to-protect cause of action under Bivens. See Bistrian v. Levi, 912 F.3d 79, 90–91 (3rd Cir. 2018) ("Although the Farmer Court did not explicitly state that it was recognizing a Bivens claim, it not only vacated the grant of summary judgment in favor of the prison officials but also discussed at length 'deliberate indifference' as the legal standard to assess a Bivens claim, the standard by which all subsequent prisoner safety claims have been assessed. It seems clear, then, that the Supreme Court has, pursuant to Bivens, recognized a failure-to-protect claim under the Eighth Amendment." (internal citation omitted) (citing Farmer, 832–49)); Mourad v. Fleming, 180 Fed. App'x 523, 524 (5th Cir. 2006) (per curiam) (discussing an Eighth Amendment Bivens claim under Farmer by "[a]ssuming without deciding that [plaintiff] might be entitled to nominal or punitive damages arising from an alleged Eighth Amendment violation despite suffering only emotional injury" but ultimately denying such a claim because plaintiff "failed to allege facts that the defendants knew of and disregarded an excessive risk to his safety" and thus finding that plaintiff "failed to state an Eighth Amendment claim that would warrant any monetary damage award" (citing Farmer, 511 U.S. at 837)); Yeadon v. Lappin, 423 Fed. App'x 627, 630 (7th Cir. 2011) (addressing an Eighth Amendment

Bivens claim and stating that "[o]fficials are liable under the Eighth Amendment only if they were aware that a prisoner faced a substantial risk of harm and yet failed to take reasonable measures to address that risk" (citing Farmer, 511 U.S. at 847)); Muick v. Reno, 83 Fed. App'x 851, 854 (8th Cir. 2003) (per curiam) (implicitly recognizing an Eighth Amendment Bivens claim but stating that plaintiff's factual allegation of "a deprivation was not sufficiently serious to trigger the Eighth Amendment" (citing Farmer, 511 U.S. at 834)); Skinner v. United States Bureau of Prisons, 283 Fed. App'x 598, 599 (10th Cir. 2008) (stating that "Bivens provides an action for money damages against federal officials who, acting in their individual capacities, violate a person's constitutional rights" and observing that "'[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment'" when assessing a plaintiff's failure-to-protect Eighth Amendment Bivens claim (quoting Farmer, 511 U.S. at 828)); Sherman v. Lew, No. 17-12809, 2018 U.S. App. LEXIS 35146, at *7 (11th Cir. 2018) (stating that Hernandez v. Mesa, 137 S. Ct. 2003 (2017) and Abbasi indicated "that Bivens claims may apply to a much narrower scope of cases than previously permitted" but declining to conduct "an analysis under these cases" in the context of an Eighth Amendment failure-to-protect claim brought pursuant to Bivens, and applying Farmer to that claim by stating that "[u]nder the Eighth Amendment, prison officials 'must take reasonable measures to guarantee the safety of [its] inmates' and have a specific duty to protect prisoners against violence at the hands of other prisoners" (quoting Farmer, 511 U.S. at 832–33)); but see Hower v. Damron, No. 21-5996, 2022 U.S. App. LEXIS 24676, at *5 (6th Cir. 2022) (finding that the factual allegations raised in a plaintiff's Eighth Amendment failure-to-protect claim arose "in a 'new context'" and could not be brought pursuant to Bivens, but deciding this without addressing Farmer).

6

The Fourth Circuit has stated that "[a]lthough the Abbasi Court did not include Farmer in its list of recognized Bivens contexts[,]" ultimately "[t]he Supreme Court may have recognized a fourth Bivens context in Farmer v. Brennan, which sustained a prisoner's Eighth Amendment claim for damages against federal prison officials for failure to protect" Attkisson v. Holder, 925 F.3d 606, 621 n.6 (2019) (citing Farmer, 511 U.S. at 843–49)). However, in a more recent decision, the Fourth Circuit stated that in Farmer "while the [Supreme] Court allowed the action to proceed, it never addressed whether the claim was properly a Bivens claim." Tate v. Harmon, 54 F.4th 839, 847 (4th Cir. 2022). The Magistrate Judge based his findings on district court cases offering similar arguments to Tate. R. & R. at 12; see also Johnson v. Santiago, No. 20-CV-6345, 2022 U.S. Dist. LEXIS 152274, at *9 (E.D.N.Y. Aug. 24, 2022) (stating that "Farmer did not address the question of whether a Bivens remedy should be implied under the Constitution" and that "[i]nstead, Farmer merely 'define[d] the term deliberate indifference' for purposes of an Eighth Amendment claim" (quoting Farmer, 511 U.S. at 829)); Herrera v. United States, No. 20-CV-10206, 2022 U.S. Dist. LEXIS 55927, at *20–21 (S.D.N.Y. Mar. 27, 2022). (stating that "Farmer focused on defining what 'deliberate indifference meant for pleading Eighth Amendment violations"); Calix v. Pope, No. 18-CV-6685, 2022 U.S. Dist. LEXIS 176238, at *12–13 (E.D.N.Y. Sept. 28, 2022) (stating that "while the dispute [in Farmer] arose in the context of a civil suit by an inmate raising a claim relating to prisoner-on-prisoner violence, the [Supreme] Court did not address—but simply assumed—that a Bivens cause-of-action existed for such a claim" and stating that "[a]ccordingly, in the years since, the Supreme Court has never construed Farmer to establish the availability of a Bivens remedy for such claims").

However, in the years prior to and concurrent with the Farmer decision, the Supreme Court assiduously focused on the threshold question of whether implied causes of action existed

when plaintiffs sought to bring <u>Bivens</u> actions under a variety of different constitutional

provisions. As the Supreme Court observed in <u>Abbasi</u>, "the [Supreme] Court declined to create

an implied damages remedy in the following cases: a First Amendment suit against a federal

employer, <u>Bush v. Lucas</u>, 462 U.S. 367, 390 [] (1983); a race-discrimination suit against military

officers, <u>Chappell v. Wallace</u>, 462 U.S. 296, 297, 304–305 [] (1983); a substantive due process

suit against military officers, <u>United States v. Stanley</u>, 483 U.S. 669, 671–672, 683–684 []

(1987); a procedural due process suit against Social Security officials, <u>Schweiker v. Chilicky</u>,

487 U.S. 412, 414 [] (1988); [and] a procedural due process suit against a federal agency for

wrongful termination, <u>FDIC v. Meyer</u>, 510 U.S. 471, 473–74 [] (1994) . . . ." <u>Abbasi</u>, 137 S. Ct.

at 1857. Indeed, the Supreme Court issued the <u>Meyer</u> decision denying a <u>Bivens</u> cause of action

in the procedural Due Process context during the same Supreme Court term as <u>Farmer</u>. Thus, the

legal history demonstrates that the Supreme Court's <u>Bivens</u> jurisprudence in the years leading up

to <u>Farmer</u> emphasized the importance of answering the threshold question of whether an implied

cause of action existed with regard to various constitutional provisions. In <u>Farmer</u> the Supreme

Court could have commented on this threshold question—as the Supreme Court had done in

<u>Bush</u>, <u>Chappell</u>, <u>Stanley</u>, <u>Schweiker</u>, and <u>Meyer</u>—but the Supreme Court chose not to do so with

respect to <u>Farmer</u>'s Eighth Amendment failure-to-protect claim brought pursuant to <u>Bivens</u>. <u>Cf.</u>

<u>Sherman v. United States</u>, 356 U.S. 369, 379 n.2 (1958) (Frankfurter, J., concurring) ("It is of

course not a rigid rule of this [Supreme] Court to restrict consideration of a case merely to

arguments advanced by counsel.").

The Fourth Circuit in <u>Tate</u> also asserted that "the [Supreme] Court has never considered

<u>Farmer</u> a <u>Bivens</u> case when cataloging *all* of its <u>Bivens</u> cases." <u>Tate</u>, 54 F.4th at 847 (emphasis in

original); <u>see also</u> <u>Johnson</u>, 2022 U.S. Dist. LEXIS 152274, at *8 ("'In recent cases . . . the

Supreme Court has 'identified three <u>Bivens</u> contexts and [has] not address[ed], or otherwise cite[d] to, <u>Farmer</u>." (quoting <u>Bistrian</u>, 912 F.3d at 91)).[1] <u>Tate</u> and <u>Johnson</u> appear to contend that, even assuming <u>Farmer</u> did find an implied cause of action pursuant to <u>Bivens</u> under the Eighth Amendment for failure-to-protect, subsequent Supreme Court decisions have overruled <u>Farmer</u>'s recognition of a <u>Bivens</u> cause of action sub silentio. However, neither <u>Abbasi</u> nor its more recent progeny, such as <u>Egbert v. Boule</u>, 142 S. Ct. 1793 (2022), "contradict" the reasoning in <u>Farmer</u> "that the Supreme Court has, pursuant to <u>Bivens</u>, recognized a failure-to-protect claim under the Eighth Amendment." <u>Bistrian</u>, 912 F.3d at 91. "It is true that <u>Abbasi</u> [and <u>Egbert</u>] identified three <u>Bivens</u> contexts and did not address, or otherwise cite to <u>Farmer</u>." <u>Bistrian</u>, 912 F.3d at 91. However, "[i]t may be that the [Supreme] Court simply viewed the failure-to-protect claim as not distinct from the Eighth Amendment deliberate indifference claim in the medical context." <u>Bistrian</u>, 912 F.3d at 91. Indeed, <u>Farmer</u> itself analyzed the plaintiff's claim "alleging a violation of the Eighth Amendment" under both <u>Bivens</u> and <u>Carlson</u>, which dealt with Eighth Amendment deliberate medical indifference. <u>See</u> <u>Farmer</u>, 511 U.S. at 830 (citing <u>Bivens</u>, 403 U.S. at 388 and <u>Carlson</u>, 446 U.S. at 14). Accordingly, this Court "decline[s] to conclude [that the Supreme Court's] more recent cases have, by implication, overruled an earlier precedent." <u>Bistrian</u>, 912 F.3d 91 (internal quotations omitted). Thus, "Farmer continues to be the case that most

---

[1] These cases include <u>Bivens</u> itself, which "held that, even absent statutory authorization, [the Supreme Court] would enforce a damages remedy to compensate persons injured by federal officers who violated the [Fourth Amendment's] prohibition against unreasonable search and seizures[,]" <u>Abbasi</u>, 137 S. Ct. at 1854, as well as <u>Davis v. Passman</u>, 442 U.S. 228 (1979) which addressed claims brought by "an administrative assistant [who] sued a Congressman for firing her because she was a woman" and which "held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination[,]" <u>Abbasi</u>, 137 S. Ct. at 1854–55, and <u>Carlson v. Green</u>, which dealt with claims brought by "a prisoner's estate [that] sued federal jailers for failing to treat the prisoner's asthma" and which "held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment[,]" <u>Abbasi</u>, 137 S. Ct. at 1855.

directly deals with whether a <u>Bivens</u> remedy is available for a failure-to-protect claim resulting in physical injury." <u>Id.</u> (citing <u>Farmer</u>, 511 U.S. at 832–34).

In this case, as in <u>Farmer</u>, Plaintiff's Eighth Amendment claim against a prison official is derived from Defendant's alleged failure-to-protect Plaintiff from prisoner-on-prisoner violence. <u>See Farmer</u>, 511 U.S. at 829–34. The Court finds that Plaintiff's Eighth Amendment failure-to-protect claim is not "'different in a meaningful way from previous <u>Bivens</u> cases decided by th[e Supreme] Court,'" <u>Egbert</u>, 142 S. Ct. at 1813–14. Specifically, Plaintiff's Eighth Amendment failure-to-protect claim is not different in a meaningful way from the Eighth Amendment failure-to-protect claim permitted by the Supreme Court in <u>Farmer</u>. <u>See Farmer</u>, 511 U.S. at 830–48; <u>cf.</u> <u>Bistrian</u>, 912 F.3d at 92 ("The failure-to-protect claim here does not call for any extension of <u>Bivens</u>."). "Since [the Court] conclude[s] a failure-to-protect claim does not present a new context, there is no need to address the second step and consider special factors." <u>Id.</u> at 91–92. Accordingly, the Court rejects the <u>Bivens</u> analysis in the Report & Recommendation.

Because the Court declines to adopt the <u>Bivens</u> findings in the Report & Recommendation, which were the basis for the Magistrate Judge's recommendation to grant Defendant's Motion to Dismiss, R. & R. at 14, the Court will assess whether Defendant's Motion to Dismiss should be granted on other grounds pursuant to Rule 12(b)(6).

### 1. *Legal Standard Under Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), "a party may assert the following [defense] by motion: . . . (6) failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss for failure to state a claim, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). The Supreme Court has stated that while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

In the context of a Rule 12(b)(6) motion, the Court "construe[s] plaintiffs' complaint liberally, 'accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiffs' favor.'" Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (quoting Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008)). Moreover, "[i]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).

    2.  *Defendant's Motion to Dismiss and Plaintiff's Amended Complaint*[2]

The Magistrate Judge cited to Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 299, 303–04 (2d Cir. 2020), when discussing the effect that the filing of an amended complaint would

---

[2] The Court reviews this portion of the Report & Recommendation de novo because it is relevant to the underlying Eighth Amendment failure-to-protect claim brought pursuant to Bivens, discussed above.

11

have on a pending motion to dismiss filed prior to the amended pleading. R. & R. at 4. Here, the

Court likewise follows the reasoning of Pettaway, which held "that when a plaintiff properly

amends her complaint after a defendant has filed a motion to dismiss that is still pending, the

district court has the option of either denying the pending motion as moot or evaluating the

motion in light of the facts alleged in the amended complaint." 55 F.3d at 303–04. Accordingly,

the Court will evaluate the Motion to Dismiss in light of the facts alleged in the Amended

Complaint.

### 3. Eighth Amendment Failure-to-Protect Under Farmer

The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual

punishments . . . ." U.S. Const. amend VIII. Farmer sets forth the standard for an Eighth

Amendment failure-to-protect claim: "[A] prison official violates the Eighth Amendment only

when two requirements are met." 511 U.S. at 834. A plaintiff must first meet an objective prong:

> First, the deprivation alleged must be, objectively, sufficiently
> serious; a prison official's acts or omissions must result in the denial
> of the minimal civilized measure of life's necessities. For a claim
> (like the one here) based on a failure to prevent harm, the inmate
> must show that he is incarcerated under conditions posing a
> substantial risk of serious harm.

Id. (internal quotations and citations omitted). A plaintiff must also meet a second prong:

> The second requirement follows from the principle that only the
> unnecessary and wanton infliction of pain implicates the Eighth
> Amendment. To violate the Cruel and Unusual Punishments Clause,
> a prison official must have a sufficiently culpable state of mind. In
> prison-conditions cases that state of mind is one of deliberate
> indifference to inmate health or safety . . . .

Id. (internal quotations and citations omitted). This second prong is defined subjectively: "[A]

prison official cannot be found liable under the Eighth Amendment for denying an inmate

humane conditions of confinement unless the official knows of and disregards an excessive risk

to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

"[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. However, the Supreme Court has stated that "gratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate penological objective[,]'" id. at 833 (quoting Hudson v. Palmer, 468 U.S. 517, 548 (1984) (Stevens, J., concurring in part and dissenting in part)), nor does "it square[] with 'evolving standards of decency,'" Farmer, 511 U.S. at 833–34 (internal quotations omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). "'Such brutality is the equivalent of torture, and is offensive to any modern standard of human dignity.'" Farmer, 511 U.S. at 833 (Blackmun, J., concurring) (quoting United States v. Bailey, 444 U.S. 394, 423 (1980) (Blackmun, J., dissenting)). "Although formally sentenced to a term of incarceration, many inmates discover that their punishment, even for nonviolent offenses like credit card fraud or tax evasion, degenerates into a reign of terror unmitigated by the protection supposedly afforded by prison officials." Farmer, 511 U.S. at 853 (Blackmun, J., concurring).

Plaintiff has pled facts indicating that, under Farmer's objective prong, he was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Plaintiff states he "was stabbed in other facilities of the BOP" before arriving at F.C.I. Ray Brook ("Ray Brook"). Am. Compl. at 2. Plaintiff asserts that at Ray Brook, he was threatened by Prisoner #1 who allegedly said he "would assault, beat and robb [sic] plaintiff of all his personal property and commissary[,]" Am. Comp. at 4, that two prisoners associated with Prisoner #1 told Plaintiff to "leave the compound before it was too late" and then "flashed prison styled

shanks[,]" id., and that because of this situation Plaintiff informed members of the prison staff

that he "was feeling suicidal and was thinking about killing himself[,]" id. at 4. Ultimately, this

set of circumstances concluded with "Prisoner #1 assault[ing] [P]laintiff in his [plaintiff['s]]

assigned cell." Id. at 6. While Defendant characterizes the assault as a "single incident" that is

not "severe enough" to trigger Eighth Amendment protections, the Court disagrees in light of the

facts alleged by Plaintiff, including a series of ongoing threats of assault and stabbings, which

caused Plaintiff's suicidal ideation, and which ultimately concluding with a violent assault on

Plaintiff. Mot. to Dismiss at 17 (quotations omitted). "Unable to fend for himself without the

protection of prison officials, the victim finds himself at the mercy of larger, stronger, and

ruthless inmates." Farmer, 511 U.S. at 853 (Blackmun, J., concurring). Therefore, the Court finds

that Plaintiff's factual allegations plausibly state that the "deprivation alleged" was "objectively,

sufficiently serious . . . ." Farmer, 511 U.S. at 834.

Under the subjective prong: "Whether a prison official had the requisite knowledge of a

substantial risk is a question of fact subject to demonstration in the usual ways, including

inference from circumstantial evidence, and a factfinder may conclude that a prison official knew

of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citation omitted).

As Farmer clarifies:

> For example, if an Eighth Amendment plaintiff presents evidence
> showing that a substantial risk of inmate attacks was longstanding,
> pervasive, well-documented, or expressly noted by prison officials
> in the past, and the circumstances suggest that the defendant-official
> being sued has been exposed to information concerning the risk and
> thus might have known about it, then such evidence could be
> sufficient to permit a trier of fact to find that the defendant-official
> had actual knowledge of the risk.

Id. (quotations omitted).

Defendant argues that Plaintiff's "pleadings are devoid of facts indicating that he had faced assaults of the same character and under the same circumstances as the assault at issue here." Mot. to Dismiss at 20. However, Defendant notes that Plaintiff "informed Lt. Dutton of 'his history of past assaults . . .'" and that "Lt. Dutton 'assured Plaintiff he was well aware of Plaintiff['s] vulnerability of being assaulted in the past.'" Id. at 21 (quoting Compl. at 4).

In the Amended Complaint, Plaintiff states that he told correction officer John Doe of his "history of previous assaults in which Plaintiff was stabbed at other facilities of the BOP" and that "he did not feel safe walking the RayBrook [sic] compound . . . ." Am. Compl. at 2. According to Plaintiff, "John Doe informed plaintiff he would most likely be stabbed while on the compound." Id. "Shortly after this encounter with John Doe, Plaintiff met with S.I.S. [Special Investigative Supervisor] and discussed his safety concerns. Plaintiff informed these men that he did not feel safe walking the Ray Brook compound. Plaintiff expressed his concerns that he did not understand why he was designated to the active yard . . . ." Id. at 2–3.

"On August 13, 2021, Plaintiff sent an electronic cop out to the Warden expressing a threat to his safety" and "informed the warden . . . [W]ashington about his previous attempts to request protective services[,]" and Plaintiff ultimately requested to "be removed from the compound and transferred to a compound where he did not have to worry about his safety." Id. at 4. Plaintiff was fearful of providing the "names of the men responcible [sic]" to the prison staff because Plaintiff "[b]eliev[ed] if he cooperated with the compound staff, he would be labeled a rat and would face future consequences from prisoner[s] in other BOP facilities . . . ." Id. at 5.

Later, Plaintiff provided "the officer office with a copy of the electronic cop-out sent VIA email to the warden" and "request[ed] that prisoner #1 be present as he informed the housing officer [C.o [sic] Kegel] that he was requesting protective custody, due to the reasoning that he

[plaintiff] was in fear of his life and safety." Id. at 6. "Plaintiff requested prisoner #1 to stand by and bear witness that he was not 'snitchin [sic] on him." Id. Plaintiff alleges that he was denied protective custody. Id. That same day, Plaintiff informed prison staff that he "was thinking about killing himself" and was "placed on constant observation[,]" at which time he spoke with "Ms Maiwald of Physcology [sic]" and "expressed to this facility staff member his actual concern for his safety from others and not himself." Id. After his discharge from observation, Plaintiff spoke with Defendant about seeking some form of "protective custody[.]" Id. at 6–7.

Based on these facts, the Court finds that Plaintiff has plausibly alleged "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past . . . ." Farmer, 511 U.S. at 842. The Court next turns to whether the "defendant-official being sued has been exposed to information concerning the risk and thus might have known about it . . . ." Id.

Plaintiff alleges that after he was discharged from "suicide watch" on August 29, 2021, he spoke with Defendant about the opportunity to receive "protective custody[,]" but Defendant informed Plaintiff that "if plaintiff did not provide the wanted names he was inquiring about, plaintiff would be returned back to general population, and if and when plaintiff needed to obtain the facility protection he [plaintiff] would be denied protection for the remainder of hi[s] [defendant['s]] shift." Am. Compl. at 7. Thereafter, "Plaintiff in fear of being harmed if and when he returned to general population, informed defendant of his history of being victimized and suffering assaults" and "defendant assured plaintiff he was well aware of his past victimization, and vulnerability of being a victim of further assaults [sic] if he was returned to the general population . . . ." Id.

16

However, according to Plaintiff, Defendant continued to state that "if plaintiff did not provide [Defendant] the requested information he sought, he would not provide plaintiff with the needed protection no matter how much he [plaintiff] required it." Id. "Plaintiff remained reluctant with providing the prisoner names, but instead continued to inform defendant his life was in grave danger and would like to request the facility protection and [to be] sent to SHU to await a[n] SIS [sic] investigation." Id. "Defendant informed plaintiff his opportunity for [] the facility protection was now closed, and if and when plaintiff requested protective services when he returned to general population he [defendant] would deny him." Id. After this statement, Defendant directed Plaintiff to leave the office but "Plaintiff then began to beg Defendant to place him in SHU so he could wait [until] the SIS [sic] investigation." Id. Next, "Defendant grabbed the facility issued canister filled with detterant [sic] for prisoners" and "in a yelling manner" gave a "direct order to leave his office" with which Plaintiff complied. Id.

After Plaintiff's conversation with Defendant, Plaintiff was approached by Prisoner #1 who "stated plaintiff could not remain on the compound and needed to leave immeadiatly [sic]." Id. Prisoner #1 and Plaintiff approached an officer identified as "John Doe" and "Prisoner #1" acted in a "threatening and aggressive manner" and "informed [J]ohn [D]oe that plaintiff could not remain on the compound and would be subjected to physical harm if he did." Id. John Doe called Defendant who "denied protective service" and John Doe allegedly told Plaintiff that "Lt. Dutton stated that he gave you an oppertunity [sic] to recieve [sic] services, you denied it then, and he's denying you now." Id. at 8. "Prisoner #1 who was present during the phone call exited out of the officer['s] office." Id. Plaintiff asked John Doe to call Defendant back but John Doe allegedly stated, "'He was not dealing with the Bull shit[,]'" and ordered Plaintiff to leave the

17

office. Id. Plaintiff returned to his cell and immediately thereafter Plaintiff was assaulted by
Prisoner #1. Id.

The Court finds that Plaintiff has alleged facts plausibly showing that Defendant was
"exposed to information concerning the risk" of prisoner-on-prisoner violence with respect to
Plaintiff "and thus might have known about it . . . ." Farmer, 511 U.S. at 842. Accordingly, the
Court finds that Plaintiff has plausibly pled facts indicating that Defendant "kn[e]w[] of and
disregard[ed] an excessive risk to inmate health or safety" because the facts alleged indicate that
Defendant was "aware of facts from which the inference could be drawn that a substantial risk of
serious harm exists" and "also dr[e]w the inference." Farmer, 511 U.S. at 837. Therefore, the
Court finds that Plaintiff has plausibly pled facts meeting the subjective prong under Farmer, and
thus Plaintiff has stated an Eighth Amendment failure-to-protect claim. For these reasons,
Defendant's Motion to Dismiss for failure to state an Eighth Amendment failure-to-protect claim
pursuant to Bivens is denied.

### 4. Qualified Immunity

In the Motion to Dismiss, Defendant also argues that Plaintiff's Eighth Amendment claim
pursuant to Bivens should be dismissed on the basis of qualified immunity. Mot. to Dismiss at
15. Since the Report & Recommendation found that Plaintiff's Eighth Amendment claim could
not proceed under Bivens, the Magistrate "decline[d] to address defendant Dutton's argument
regarding qualified immunity." R. &. R. at 14 n.2. However, because this Court has found that
Plaintiff stated an Eighth Amendment failure-to-protect claim pursuant to Bivens, the Court will
also address Defendant's qualified immunity arguments.

"Although qualified immunity is an affirmative defense, available to federal officials
sued under Bivens, it may be asserted in a motion to dismiss under Rule 12(b)(6) of the Rules of

Civil Procedure as long as the defense is based on facts appearing on the face of the complaint." Benzman v. Whitman, 523 F.3d 119, 125 (2d Cir. 2008) (internal citations and quotations omitted). While "federal officials' claims of qualified immunity should be decided as early as possible in a case" the Second Circuit has stated that "qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." Walker v. Schult, 717 F.3d 119, 132 (2d Cir. 2013). Therefore, because Plaintiff has "plausibly alleged" an Eighth Amendment failure-to-protect claim pursuant to Bivens against Defendant here, "further facts are required to decide the question of qualified immunity" and "[i]n light of the specific factual allegations here, it would be inappropriate to conclude as a matter of law at the pleadings stage of the litigation that [D]efendant[] did not violate [Plaintiff's] clearly established constitutional rights." Id. Accordingly, Defendant's Motion to Dismiss on the basis of qualified immunity is denied, because the issue is best suited to decision on a motion for summary judgment. Thus, Defendant's Motion to Dismiss is denied in its entirety.

### B.  Other Portions of the Report & Recommendation

The Court reviews the other portion of the Report & Recommendation addressing Plaintiff's negligent infliction of emotional distress claim pursuant to the FTCA for clear error and finds none. Accordingly, the Court adopts this portion of the Report & Recommendation.

### V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report & Recommendation (Dkt. No. 40) is **ADOPTED in part** and **REJECTED in part**; and it is further

**ORDERED**, that the Amended Complaint (Dkt. No. 36) is accepted for filing and is considered the operative pleading in this case; and it is further

**ORDERED**, that Plaintiff's negligent infliction of emotional distress FTCA claim asserted against Defendant is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915(A) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that Defendant's Motion to Dismiss (Dkt. No. 30) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      February 28, 2022
            Albany, New York

LAWRENCE E. KAHN
United States District Judge